**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA          *

v.                                *          Crim. No. DLB-14-37

MICHAEL GASKIN,                   *

    Defendant.                    *

**MEMORANDUM OPINION**

The United States Probation Office asks the Court to modify the supervised release conditions of Michael Gaskin, a 43-year-old man serving a 15-year period of supervised release for distribution of child pornography. Probation wants to add a requirement that Mr. Gaskin "submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that [he is] in compliance with the requirements of [his] supervision or treatment program." ECF 40. Mr. Gaskin objects. The government does not join in or oppose the request; it defers to the Court. Probation's request to modify Mr. Gaskin's supervised release conditions is denied.

In the five years that Mr. Gaskin has been under supervision, he has fully complied with the conditions of supervised release. He has not been charged with a new crime or a violation of supervised release. He successfully completed sex offender treatment. During treatment, he submitted to several polygraph examinations; the results showed no deception. He lives alone, works part-time, and continues to receive mental health counseling. Under the specific facts of this case, the special condition that Probation seeks does not comply with 18 U.S.C. § 3583(d). It is not "reasonably related" to the nature and circumstances of Mr. Gaskin's offense, his history and characteristics, and the statutory goals of deterrence, protection of the public, and rehabilitation as they pertain to Mr. Gaskin.

## I.    Background

On April 24, 2014, Mr. Gaskin pled guilty to distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2). In the stipulation of facts, Mr. Gaskin admitted that, between December 8, 2010 and September 23, 2012, he emailed over 300 images of child pornography to an adult female he met in an online chat room. ECF 19-1. Police executed a search and seizure warrant for his home and computer on December 2, 2013. *Id.* On his computer, police found 262 images and two videos depicting minors engaged in sexually explicit conduct. *Id.* At the time, Mr. Gaskin had two prior convictions, both in state court in Shenandoah County, Virginia: (1) a 2006 misdemeanor conviction for contributing to the delinquency of a minor, for which he received a 12-month suspended sentence and 12 months of unsupervised probation; and (2) a 2009 misdemeanor conviction for buying alcohol for an unauthorized person, for which he received a 60-day suspended sentence and one year of unsupervised probation. *See* ECF 29.

On June 20, 2014, the Court sentenced Mr. Gaskin to 78 months' incarceration and 15 years of supervised release. ECF 34. The Court imposed the mandatory and standard conditions of supervised release and several special conditions. *Id.* The special conditions included substance abuse treatment, mental health treatment, sex offender registration and notification, sex offender treatment,[1] no contact with minors, no possession of or viewing pornography, and a computer/Internet restriction. *Id.* The Court did not impose polygraph testing as a condition of supervised release. *See id.*[2]

---

[1] The sex offender treatment condition stated: "The defendant shall participate in a sex offender treatment program as directed by the U.S. Probation Officer. The defendant shall follow the rules and regulations of the sex offender treatment program as directed by the probation office." ECF 34.

[2] The Honorable Paul W. Grimm accepted Mr. Gaskin's guilty plea and imposed the sentence. After Judge Grimm retired in December 2022, this case was reassigned to the undersigned.

Mr. Gaskin was released from the custody of the Bureau of Prisons on December 30, 2019, and his 15-year period of supervised release began that day. ECF 40. Since then, Mr. Gaskin has performed well under supervision. He was assessed for substance abuse and recommended for random drug testing; all test results have been negative. *Id.* He is compliant with the requirements of the Maryland Sex Offender Registry. *Id.* He is compliant with the computer/Internet restriction. *Id.*

Shortly after his release from prison, Mr. Gaskin began a sex offender treatment program. In March 2020, his provider conducted a psychosexual risk assessment and recommended that Mr. Gaskin participate in 18 to 24 months of treatment. ECF 57-1, at 23, 42–43. His treatment involved weekly individual and group therapy sessions at first, and then biweekly sessions. He completed his formal services on September 30, 2022 and began "aftercare," which involved monthly individual and group sessions. ECF 57-3, at 34. Throughout this time, Mr. Gaskin actively participated in the treatment program and complied with the program's rules and regulations. *Id.* As part of his treatment, he was required to sit for polygraph examinations. *Id.* During treatment, Mr. Gaskin submitted to polygraph testing six times: in February 2020, July 2020, July 2021, February 2022, October 2022, and April 2023.[3] ECF 57-6. Each time, the test results yielded no deception. *Id.*

---

[3] Before and during the polygraph examinations, the polygrapher asked Mr. Gaskin, among other things: whether he has had intentional contact with someone he knew was under 18; whether he had used an unauthorized Internet-capable device; whether he intentionally sought out or viewed non-pornographic images of a minor for sexual arousal; whether he intentionally sought out or viewed any X-rated sexual or pornographic material; whether he had solicited prostitutes or been to massage parlors to exchange money for sex; whether he had consensual sex with anyone, including adults; how often he masturbates; and what his sexual fantasies are. ECF 57-6, at 6, 24–28, 33.

On August 25, 2023, shortly before Mr. Gaskin's sex offender treatment program was scheduled to end, the United States Probation Office submitted a request to modify his supervised release conditions to include a polygraph testing requirement. ECF 40. The proposed condition is: "You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that you are in compliance with the requirements of your supervision or treatment program." *Id.* at 1. As justification for the request, the probation officer stated:

> A review of Mr. Gaskin's judgment reveals that, while sex offender specific treatment is ordered, polygraph testing is not specifically identified. Polygraph examinations are beneficial for the effective supervision of an individual under supervision for a sex offense and provide . . . an additional tool to support and encourage an individual's compliance with the requirements of supervision and/or treatment services.

> While Mr. Gaskin has complied with polygraph testing since the commencement of supervision, we've received a directive that the polygraph specific conditions be ordered in order to continue. On July 11, 2023, I met with Mr. Gaskin and reviewed the recommendation to modify the conditions of supervision to include polygraph testing. We reviewed the Waiver of Hearing to Modify Conditions of Supervised Release (Prob 49) and he agreed to the modification. Given [sic] Mr. Gaskin no longer retained defense counsel, [the duty attorney at] the Federal Public Defender's Office was notified of the proposed modification request, and she expressed opposition.

*Id.* at 2.

In September 2023, Mr. Gaskin successfully completed sex offender treatment. ECF 57-4, at 24. According to the treatment records, he regularly "participate[d] in a productive and honest manner in individual and group sessions," *id.* at 21, and his participation was "consistently meaningful," ECF 57-1, at 17; *id.* at 50 (same); *id.* at 61 (same). His therapist reported in 2023 that his "treatment compliance continue[d] to be excellent, and he attended all of his scheduled sessions on time and prepared." ECF 57-4, at 5. Additionally, Mr. Gaskin "report[ed] increased positive and honest communication with his friends and family members." ECF 57-1, at 16. And he continued to make "progress towards taking accountability for his offense behaviors" and "made

efforts to be more social in the community," ECF 57-4, at 21; *see id.* at 5. The final report noted that Mr. Gaskin "continue[d] to use relapse prevention strategies effectively and reported no lapse or relapse behaviors. He [was] dating and continue[d] to work," which were "two of his major treatment goals." *Id.* at 24.[4]

Mr. Gaskin resides alone, receives Social Security disability benefits, and works part-time as a store associate. ECF 40. Since his release from prison, he has not been arrested for or charged with another crime, and he has never been charged with a violation of his supervised release conditions. ECF 57-5, at 5. Mr. Gaskin's conduct on supervision did not prompt Probation's request to add polygraph testing as a condition of supervised release. Probation submitted the request because it "received a directive that the polygraph specific condition be ordered in order to continue" administering the test after the sex offender treatment program concluded. *Id.* at 2. This directive apparently applies to sex offenders on supervision in the District of Maryland who do not have a polygraph requirement as a condition of supervised release.

The parties tried to resolve, without Court intervention, their disagreement over whether a polygraph testing requirement for Mr. Gaskin is appropriate. Their discussions were part of broader talks between the Probation Office, the Federal Public Defender's Office, and the United States Attorney's Office concerning Probation's desire to modify the conditions of supervised release for

---

[4] Mr. Gaskin continued with mental health counseling after his sex offender treatment concluded. In December 2023 treatment records, his mental health therapist noted that he "attends sessions on time and . . . actively participates. He continues to interact with his friends and to work around his house to improve the outer appearance." ECF 57-4, at 26. He also "responds in an open forthright manner in the sessions" and is "committed to working and living within the boundaries of the law." *Id.* at 27.

sex offenders under supervision to include polygraph testing. After months of discussion, the parties informed the Court that they could not reach an agreement.[5]

The Court held a hearing on the modification request on April 15, 2024. At the outset, Probation reported that it "has no allegations of any violations at this point" and that Mr. Gaskin has "done well under supervision." ECF 57-5, at 5. Probation explained its reason for the polygraph condition is "to confirm that [he] is in fact complying with the terms and conditions of supervision" and that "his risk behavior has not escalated" and "to reduce recidivism." *Id.* at 11–12. Probation wants this special condition imposed on any sex offender under supervision in the District of Maryland who must comply with the following two special conditions: computer monitoring of Internet-capable devices and no contact with minors. *Id.* at 20–21.[6] The polygraph allows Probation to test "whether or not [the supervisee] has utilized any unapproved internet-capable device" and whether he has had any contact with minors. *Id.* at 20. These "maintenance polygraphs" would be done "on an annual basis, just to determine that everything is going well for supervision." *Id.* at 28.

During the hearing, Probation gave the Court a November 1, 2023 letter from Elizabeth Raeder Freeland, a clinical member of the Association for the Treatment and Prevention of Sexual Abuse. ECF 50. In her letter, Ms. Freeland stated:

---

[5] Recently, the Court imposed the following special conditions in another sex offender case: (1) "Polygraph Examination – As part of any sex offender treatment, you must submit to periodic polygraph examinations if directed to do so by your treatment provider, who will arrange for the polygraph examination in consultation with the United States Probation Office"; and (2) "Sex Offender Treatment – You must participate in a sex offense-specific treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.)." Judgment, ECF 74, at 6, in *United States v. Sackmann*, Crim. No. DLB-21-355 (D.Md. Nov. 28, 2023).

[6] As Probation recognized, these two special conditions are imposed in almost every sex offender case in this district. ECF 57-5, at 21.

The purpose of this letter is to inform the court of the important clinical uses of polygraph examination in sex offender treatment. Polygraph examination is utilized in many sex offender treatment programs. It is an essential risk assessment tool used to verify that offenders have made a full disclosure of their sexual history, and do not have unreported sexual offenses or sexual problems that need to be clinically addressed in treatment. Many offenders are embarrassed or wary of disclosing the full extent of their sexual histories and minimize and underreport their sexual behaviors. This is problematic from a clinical perspective, as the object of relapse prevention treatment is to teach individual[s] healthy and adaptive coping strategies so that they can deal with their issues in more adaptive, healthy, non-sexual ways. Further, as treatment is tailored to the individual, clinicians need to know what an individual's particular treatment[] needs are so that clinical time can be spent on issues that client[s] need help with.

Polygraph examination can also help determine whether clients are engaging in sexual acting out behaviors while in treatment. Many offenders will report treatment and probation compliance, but continue to engage in maladaptive, compulsive, addictive sexual behaviors. It is not easy to cease such behaviors, and polygraph examination can serve as a motivational force to do so; if individuals know that they will be expected to take a polygraph verifying compliance with treatment expectations, they are more likely to refrain from sexual acting out behaviors. Additionally, it has been my experience in working with sexual offenders for over 14 years that the understanding that they will have to sit for polygraph exams can itself promote needed disclosures in treatment. Further, polygraph examination can serve as a deterrent to future offending behavior, which is in the interest of community safety.

*Id.* at 1. Although Ms. Freeland does not mention Mr. Gaskin in her letter, she was his therapist.

ECF 57-5, at 12; *see also* ECF 57-4, at 24.

At the conclusion of the hearing, the Court ordered counsel for Mr. Gaskin and the government to brief their positions, which had not yet been reduced to writing. ECF 57-5, at 33. The Court also invited Probation to provide additional information in support of its request. *Id.* at 37. Mr. Gaskin submitted an opposition brief, his treatment records, and his polygraph examination results. ECF 57, 57-1 – 57-4, 57-6. The government submitted a short response to the Court's briefing order, which stated in relevant part:

As with all offenders, the United States makes an individualized and independent assessment of appropriate conditions of supervision and does not automatically adopt Probation's position in every instance in which relief is sought.

7

A broad range of factors impact this assessment, including criminal history, the underlying offense conduct, compliance with the conditions of supervision, and truthfulness about conduct during supervision. In this case, the Government has not been provided with sufficient information to make an individualized assessment of Defendant Gaskin's circumstances. Notably, the Government has not been provided with information that: (1) Defendant Gaskin['s] treatment provider has specifically recommended continued post-treatment maintenance polygraphs[;] (2) Defendant Gaskin has not performed satisfactorily on supervised release; or (3) Defendant Gaskin has shown signs of deception.

Accordingly, the United States does not have an adequate record to engage in an individualized assessment of Defendant Gaskin's circumstances and cannot, therefore, recommend any particular action be undertaken by the Court. Ultimately, however, the United States recognizes that the burden is on the party seeking the modification, which here is Probation—an arm of the Court. For this reason, the United States submits to the Court on Probation's requested modification to supervision.

ECF 60, at 2–3 (paragraph numbering omitted).[7] Probation did not submit any additional information.

## II.    Legal Standard

Supervised release is intended "to assist individuals in their transition to community life." *United States v. Johnson*, 529 U.S. 53, 59 (2000). It "fulfills rehabilitative ends, distinct from those served by incarceration," by assisting individuals through "supervision and training programs after release." *Id.* at 59–60 (quoting S. Rep. No. 98–225, at 124 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3307).

"When a . . . court considers whether to impose a term of supervised release, and the duration and conditions of that release, [18 U.S.C.] § 3583(c) instructs the court to employ a slightly modified version of the general 'framework for sentencing decisions' established by

---

[7] In a footnote, the government stated it "does not contend that any one of these factors"—the absence of any recommendation by a treatment provider to continue with post-treatment maintenance polygraphs; Mr. Gaskin's compliance with supervision; and the absence of signs of deception—"is necessary or dispositive, but rather examples for Probation and the Court to consider on a case-by-case basis." ECF 60, at 3 n.2.

§ 3553(a)." *United States v. McLeod*, 972 F.3d 637, 641 (4th Cir. 2020) (quoting *United States v. Burden*, 860 F.3d 45, 56 (2d Cir. 2017)). Under § 3583(c), the court must consider the factors in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). Those factors are:

> the circumstances of the crime; the history and characteristics of the defendant; the need for deterrence; protection of the public; provision of educational or vocational training, medical care, or other treatment; the kinds of sentence and the sentencing range established by the Sentencing Commission and Congress; the relevant policy statements of the U.S. Sentencing Commission; the need to avoid disparities among defendants with similar records and similar conduct of guilt; and the need to provide restitution to the victim.

*McLeod*, 972 F.3d at 641.

Under § 3583(d), the court "shall order" several mandatory conditions and "may order" discretionary conditions

> as a further condition of supervised release, to the extent that such condition—
>
> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a) . . . .

18 U.S.C. § 3583(d).[8] The factors in § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D) are the nature and circumstances of the offense, the history and characteristics of the defendant, and the statutory goals of deterrence, protection of the public, and rehabilitation. *United States v. Castellano*, 60 F.4th 217, 225 (4th Cir. 2023); *United States v. Rogers*, 961 F.3d 291, 297 (4th Cir. 2020). Rehabilitation includes "provid[ing] the defendant with needed educational or vocational training,

---

[8] Certain discretionary conditions are called "standard" conditions, U.S.S.G. § 5D1.3(c), and others are called "special" conditions, *id.* § 5D1.3(d)–(e). The discretionary condition requested by Probation in this case is a special condition.

medical care, or other correctional treatment in the most effective manner." *United States v. Douglas*, 850 F.3d 660, 663 (4th Cir. 2017) (quoting 18 U.S.C. § 3553(a)(2)(D)).

A court may modify the conditions of supervised release any time before the supervised release term expires.[9] 18 U.S.C. § 3583(e)(2). "When a district court considers whether to modify . . . a condition of supervised release, § 3583(e) authorizes the court to consider the same § 3553(a) factors enumerated in § 3583(c)." *McLeod*, 972 F.3d at 641. "The invocation of these capacious factors in both subsections (c) and (e) signals that Congress intended to give district courts broad authority to impose, modify, and revoke conditions of supervised release, as necessary, tailored to the specific and individual circumstances of each defendant." *Id*.

When presented with a request to modify release conditions to add a special condition, the court must ensure that the special condition satisfies the requirements of § 3583(d)(1)–(3). Before the court may impose a special condition, the court must conduct an "individualized assessment of the defendant and the [§ 3583(d)] factors." *Rogers*, 961 F.3d at 297 (quoting *United States v. Wroblewski*, 781 F. App'x 158, 162 (4th Cir. 2019)); *see also United States v. Van Donk*, 961 F.3d 314, 322 (4th Cir. 2020). The court must "explain any special conditions of supervised release" to show they are "'tailored to the individual defendant'" and reasonably related to the § 3583(d) factors and not "'based on boilerplate conditions imposed as a matter of course.'" *United States v. McMiller*, 954 F.3d 670, 676–77 (4th Cir. 2020) (quoting *United States v. Caravayo*, 809 F.3d 269, 276 (5th Cir. 2015)). "The amount of explanation required 'will vary with the nature of the condition imposed and the circumstances of each case.'" *Van Donk*, 961 F.3d at 322 (quoting *McMiller*, 954 F.3d at 677).

---

[9] Before a court may modify the conditions of supervised release, the court must hold a hearing at which the supervisee has the right to counsel and an opportunity to make a statement and present any mitigation information. Fed. R. Crim. P. 32.1(c)(1).

### III.    Discussion

Probation asks the Court to modify the conditions of supervised release to add a special condition that requires Mr. Gaskin to "submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that [he is] in compliance with the requirements of [his] supervision or treatment program." ECF 40, at 1. Mr. Gaskin objects to the modification. He argues that the condition does not comply with § 3583(d)(1) because it is not "reasonably related" to the nature and circumstances of his offense, his history and characteristics, and the statutory goals of deterrence, protection of the public, and rehabilitation. ECF 57, at 14. The Court agrees with Mr. Gaskin that, under the current facts and circumstances of his case, the polygraph testing condition does not comply with the statute.

A special condition that permits polygraph testing may, in certain circumstances, comply with the requirements of § 3583(d)(1). It did in *United States v. Dotson*, 324 F.3d 256 (4th Cir. 2003). There, the defendant, who had been convicted of attempted receipt of child pornography, argued that the district court had abused its discretion when it imposed a special condition of supervised release that allowed "for the possible use of physiological testing by devices such as a polygraph or penile plethysmograph test in conjunction with his [sex offender] treatment." *Id.* at 260. The Fourth Circuit found no abuse of discretion. Noting the district court's "broad latitude to impose conditions on supervised release," the court explained that a special condition of supervised release still must be "'reasonably related' to statutory factors," which include "providing the defendant with training, medical care, or treatment." *Id.* (citing 18 U.S.C. § 3553(a)(2)(D)). In Dotson's case, the condition allowing for polygraphs in conjunction with sex offender treatment complied with the statute. *Id.* at 261. In reaching this conclusion, the Fourth Circuit observed first that polygraph testing evidence "is inadmissible in nearly every circumstance

at trial." *Id*. Even so, in Dotson's case, the "use of a polygraph test . . . [wa]s not aimed at gathering

evidence to inculpate or exculpate Dotson. Rather, the test [was] contemplated as a potential

treatment tool upon Dotson's release from prison—as witnessed by the district court's direction

that the results of any polygraph testing not be made public." *Id.* For these reasons, the Fourth

Circuit held that the district court had "acted within its discretion in providing for the possible use

of . . . polygraph tests in connection with [Dotson's] treatment as special conditions of his release."

*Id.*; *see also United States v. Elinski*, 852 F. App'x 743, 744 (4th Cir. 2021) (mem.) (concluding

that the district court did not abuse its discretion in imposing special condition that required mental

health treatment and polygraph testing at discretion of treatment provider or probation officer

because "[t]he court explained the purposes of and need for the polygraph requirement as part of

mental health testing and evaluation").[10]

---

[10] Other circuits have found that a sex offender treatment condition that permits polygraph testing as part of treatment satisfies § 3583(d)(1). *See, e.g.*, *United States v. Johnson*, 446 F.3d 272, 278 (2d Cir. 2006) (approving a post-sentencing modification to a sex offender's supervised release conditions to include "mandatory sex-offender treatment using polygraph testing 'to obtain information necessary for risk management and treatment'"); *United States v. Thompson*, 888 F.3d 347, 352 (8th Cir. 2018) (approving "condition [that] . . . requires submission to physiological testing '[d]uring the course of' sex-offense treatment" and is "not a freestanding authorization to require polygraph examinations"); *see also United States v. Hohag*, 893 F.3d 1190, 1192 (9th Cir. 2018) (affirming special condition that defendant "submit to polygraph testing at the discretion of [his] probation officer, in conjunction with the sex offender specific assessment," which district court imposed because defendant had a previous rape conviction, "'a very serious offense' suggesting that Defendant might pose a present risk to the public"); *United States v. Webster*, 819 F.3d 35, 36, 41–42 (1st Cir. 2016) (affirming polygraph condition as part of sex offender treatment because "the district court sufficiently articulated the need for sex offender treatment and polygraph testing in this case" and "the sex offender treatment and polygraph conditions [were] in fact tailored to the nature and circumstances of Webster's sex offense and Webster's particular characteristics," which included "refusal to accept responsibility for his sex offense, lack of candor towards the court, and continued self-medication"—characteristics that "pose[d] a real risk of recidivism"); *United States v. Zinn*, 321 F.3d 1084, 1090 (11th Cir. 2003) (concluding polygraph condition as part of treatment program was reasonably related to Zinn's "offense and personal history"); *see also United States v. Begay*, 631 F.3d 1168, 1174 (10th Cir. 2011) (concluding court did not abuse discretion in imposing polygraph condition that was "part of prescribed sex offender treatment").

In Mr. Gaskin's case, the purpose of the special condition is not to allow for the use of polygraph examinations as a sex offender treatment tool. Sex offender treatment for Mr. Gaskin has concluded. The purpose of the polygraph condition is to allow Probation, at its discretion, to compel Mr. Gaskin to submit to polygraph testing for the remainder of his supervised release term because Probation believes polygraph examination is "an additional tool to support and encourage an individual's compliance with the requirements of supervision and/or treatment services." ECF 40, at 2.[11]

As far as this Court is aware, only once has the Fourth Circuit considered whether, under § 3583(d), a district court may impose a polygraph condition——unconnected to treatment—as a tool to assess compliance with other supervised release conditions, and that was in an unpublished opinion, *United States v. Smith*, No. 21-6632, 2023 WL 3051815 (4th Cir. Apr. 24, 2023). In *Smith*, the defendant had been convicted of possession of child pornography. *Id.* at *1. After Smith completed his 51-month sentence, he was charged with violating his release conditions "by (1) failing to follow the instructions of his probation officer; (2) possessing pornography; (3) violating his sex offender treatment contract; and (4) accessing online computer services." *Id.* He was found guilty of the violations and sentenced to 12 weekends in jail. *Id.* A year later, he was charged again with failing to comply with his treatment program. *Id.* at *2. Eventually, Smith completed sex

---

[11] The proposed special condition says the polygraph is a "means to ensure . . . compliance with the requirements of . . . supervision or treatment program." Probation has not identified any current "treatment program" that requires polygraph testing. The only "treatment program" that has been mentioned is the sex offender program that Mr. Gaskin completed. Probation has not submitted any evidence that Mr. Gaskin's current mental health treatment providers require polygraph testing or that his former sex offender treatment providers recommend post-treatment testing. Thus, the Court's analysis will focus on whether a condition that allows the use of polygraphs as a means to ensure compliance with the requirements of supervision (not treatment) satisfies the statute. To be sure, Probation has the discretion to refer Mr. Gaskin back to sex offender treatment if there is cause for it. At that point, Probation could renew its request for a special condition that allows a treatment provider to use polygraphs in connection with treatment.

offender treatment. *Id.* That program had included polygraph testing. *Id.* at *1. Smith then filed a motion to modify his supervised release conditions "to instruct the Office of Probation . . . that [he] shall not be compelled to undergo a polygraph examination that is not part of sex offender treatment." *Id.* at *2. The district court denied that request and "ordered that Smith continue to submit to polygraph examinations, as requested by the probation officer, and that the examinations 'be sharply focused on [Smith's] activities and behavior relevant to [his] attempted use or possession of pornography or child pornography.'" *Id.* The Fourth Circuit affirmed. Citing "the district court's focused order," the court listed the district court's "explicit[]" reasons for imposing the polygraph condition:

> Smith had admitted in his guilty plea to possession of a large number of images of child pornography; he had violated his conditions of supervised release by continuing his involvement with pornography; and he had been charged with failing to comply with sex offender treatment conditions. Moreover, he was proposing to live with his new wife who had two young children.

*Id.* at *3. "In this overall context," the Fourth Circuit found that "the [district] court well recognized that the possession of child pornography tended to be 'clandestine in nature,'" and "imposed the requirement of polygraph examinations . . . that are to be 'sharply focused' on Smith's 'attempted use or possession of pornography or child pornography'" as a means "to assure Smith's compliance with the prohibition against the possession and use of child pornography." *Id.* The Fourth Circuit found no abuse of discretion.[12]

Other circuits also have considered whether polygraph testing conditions—unconnected to treatment and intended to ensure compliance with supervision—comply with § 3583(d). Several

---

[12] Although *Smith* is an unpublished, non-binding decision, it can be persuasive authority if its reasoning is persuasive. *See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (explaining that unpublished Fourth Circuit decisions are "entitled only to the weight they generate by the persuasiveness of their reasoning" (quoting *Hupman v. Cook*, 640 F.2d 497, 501 & n.7 (4th Cir. 1981))). The reasoning in *Smith* is consistent with binding Fourth Circuit precedent and persuasive. The Court gives *Smith* significant weight.

have found they do. *See, e.g.*, *United States v. Sanchez*, 44 F.4th 1100, 1103–04 (8th Cir. 2022); *United States v. Pabon*, 819 F.3d 26, 33 (1st Cir. 2016); *United States v. Warren*, 843 F.3d 275, 280, 284–85 (7th Cir. 2016). In each of these cases, as in *Smith*, the district court explained why, under the circumstances of the case before it, the polygraph condition satisfied § 3583(d).

In *Sanchez*, the Eighth Circuit affirmed a district court's imposition of a special condition at sentencing that required the defendant, who had been convicted of transportation of child pornography, to "submit to periodic polygraph testing . . . to ensure that he [was] in compliance with the requirements of his supervision or treatment program." 44 F.4th at 1101. Sanchez objected to the aspect of the condition that allowed probation to administer the polygraph at its discretion. *Id.* On appeal, the Eighth Circuit determined that the district court had "conducted a thorough individualized analysis of the sentence it was imposing" and "carefully explained why the sentence would include this polygraph testing special condition." *Id.* Specifically, the district court had found evidence of Sanchez's online "fantasy chatting" about "sexual relations with children" to be "'very disturbing' because it raise[d] concern that Sanchez, though not in the past a hands-on offender, 'was on a pathway towards acting out on his fantasies.'" *Id.* at 1102. Considering "that risk of hands-on reoffending, and the fact [that] '[Sanchez] was not deterred when confronted by law enforcement [previously for possession of child pornography],' the [district] court found that polygraph testing [was] 'an appropriate tool for probation to have in its arsenal.'" *Id.* The special condition was "warranted by an individualized inquiry into [the] particular offender's circumstances." *Id.* at 1005.[13]

---

[13] The Eighth Circuit affirmed the imposition of a similar condition in *United States v. Newell*, 915 F.3d 587, 590–91 (8th Cir. 2019), where the defendant had "demonstrated a pattern of untruthfulness with his probation officer" regarding his contacts with minor children and polygraph testing "cause[d] him to be more candid than usual."

In *Pabon*, the First Circuit affirmed the imposition of a special condition that the defendant, who had been convicted of failure to register as a sex offender, "participate in testing in the form of polygraphs or any other methodology approved by the Court in order to measure compliance with the conditions of treatment and supervised release." 819 F.3d at 29, 33. The defendant objected to that condition, a sex offender treatment condition, and a no-contact-with-minors condition, among others. *Id.* at 29. The First Circuit found "the district court explained the rationale for imposing the conditions." *Id.* at 33. Among the reasons were the defendant's prior conviction for sexually molesting a 14-year-old girl (for which he received an eight-year sentence), another failure-to-register conviction, and four assault convictions. *Id.* at 32–33. The district court "found that the conditions were necessary in order to keep the public safe, and especially to protect minors from Pabon's violent inclinations." *Id.* at 33. The defendant had "a history of beating up women that needed to be addressed, and an inability to control his anger that made him a potential danger to children." *Id.* The First Circuit highlighted the district court's finding that the conditions, including the polygraph requirement, would "facilitate Pabon's rehabilitation." *Id.*

In *Warren*, the Seventh Circuit affirmed a polygraph condition tied to evaluation and treatment but applied at the probation officer's discretion. 843 F.3d at 280, 284–85. The defendant's sex offender "treatment provider had not requested polygraph testing; rather, the probation office would secure a polygraph examiner, in part for use in monitoring [his] compliance with supervision, and if probation thought the information provided during a polygraph exam might be relevant to treatment, they would pass that information along." *Id.* at 279. The *Warren* Court noted that "determining whether a polygraph condition is appropriate . . . depends on the facts of each case," as "some cases may warrant the probation officer's involvement in polygraph examinations, while others may not." *Id.* at 284. The district court had "consider[ed] all of the

evidence [and] concluded the polygraph condition was necessary." *Id.* Warren's "past criminal conduct," which included "acting as a moderator for a private website group that actively solicited, organized and posted new, disturbing images and videos of child abuse," was "more than sufficient to defer to the Probation Office's recommendation that the defendant be subject to polygraph testing . . . at least for an initial period of his supervision." *Id.* (quoting *United States v. Warren*, No. 16-cr-56-wmc, 2016 WL 738779, at *1 (W.D. Wis. Feb. 23, 2016)). Additionally, evidence in the record "suggest[ed] that [the] defendant ha[d] yet to disclose the full scope of his past sexual misconduct, [wa]s in denial about the full scope of his criminal conduct here and ha[d] given his Probation Officer pause about his ongoing conduct." *Id.* at 284–85 (quoting *Warren*, 2016 WL 738779, at *13). Even on appeal, the defendant argued there was "'no evidence that [he] ever had a specific interest in children' and that his conduct was 'far removed' from children." *Id.* at 285. Under these circumstances, polygraph testing could be "used 'to obtain a more complete sexual history, help the defendant to confront the full context of his crime of conviction or to monitor his ongoing compliance with treatment and supervised release conditions.'" *Id.* at 284 (quoting *Warren*, 2016 WL 738779, at *13).[14]

The facts in these cases are different from the facts in Mr. Gaskin's case. Here, Probation has not identified any reason—specific to Mr. Gaskin—why the polygraph condition should be

---

[14] The Third Circuit in *United States v. Lee*, 315 F.3d 206 (3d Cir. 2003), affirmed a similar special condition but did not cite the district court's reasons for imposing the condition. In *Lee*, the condition required submission "to random polygraph examination, examination to be administered by a certified examiner, at the direction and discretion of the United States Probation Officer." 315 F.3d at 209–10. Polygraphs, the court observed, "may provide an added incentive for [the supervisee] to furnish truthful testimony to the probation officer," which "would assist the officer in his or her supervision and monitoring." *Id.* at 213. Without discussing the reasons why the district court imposed the condition, the court found no abuse of discretion because the polygraph condition was "reasonably related to the protection of the public, as well as the rehabilitation of the appellant" and "could be beneficial in enhancing the supervision and treatment of Lee." *Id.* at 217.

imposed on him. The only reason Probation has identified is its belief that polygraphs "are beneficial for the effective supervision of an individual under supervision for a sex offense and provide . . . an additional tool to support and encourage an individual's compliance with the requirements of supervision." ECF 40, at 2. That generalized reason—applicable to all sex offenders under federal supervision—does not cut it. *See McMiller*, 954 F.3d at 676–77. Probation's one-size-fits-all rationale "could justify imposing [the special condition] on every sex offender categorically," which the law prohibits. *See United States v. Ellis*, 984 F.3d 1092, 1100 (4th Cir. 2021). "Polygraph testing, like other special conditions of supervised release, cannot be routinely imposed on all sex offenders." *Sanchez*, 44 F.4th at 1105. Section 3583(d) requires a case-by-case analysis of the facts specific to the defendant and an "individualized assessment" of whether the special condition should be imposed in a particular case. *Rogers*, 961 F.3d at 297 (quoting *Wroblewski*, 781 F. App'x at 162).

Recently, the Fourth Circuit has reversed district courts because they did not adequately explain why, under the specific circumstances of the case, a special condition satisfied § 3583(d). *See, e.g.*, *Ellis*, 984 F.3d 1092; *Castellano*, 60 F.4th 217; *United States v. Tyson*, No. 20-4599, 2022 WL 964017 (4th Cir. Mar. 30, 2022); *Wroblewski*, 781 F. App'x 158; *United States v. Finch*, 482 F. App'x 840 (4th Cir. 2012).

In *Ellis*, the Fourth Circuit found a district court abused its discretion when it imposed a pornography ban as a condition of supervised release for a sex offender. 984 F.3d at 1095. The district court imposed the ban "because Ellis had resisted his treatment programs and lied about viewing legal pornography." *Id.* at 1099. That was insufficient for the Fourth Circuit. *Id.* The court found that the "pornography restriction was inadequately supported and explained." *Id.* The district court "heard no evidence about how [] pornography use may or may not influence [the defendant's]

behavior." *Id.* The proponent of the condition—the government—did not introduce "individualized evidence linking pornography to [the defendant's] criminal conduct or rehabilitation and recidivation risk." *Id.* It was significant to the Fourth Circuit that "[t]here was no testimony from a witness responsible for [the defendant's] treatment." *Id.* Moreover, pornography use "was not the basis of any violation" of supervised release. *Id.* at 1100. The violations included "travelling outside the judicial district without permission, skipping therapy appointments, and lying to his probation officer, among other similar violative conduct." *Id.* Even though Ellis "did lie about watching pornography during a polygraph exam at the outset of his sex offender treatment," the Fourth Circuit found his lies did not justify the pornography ban because "the violative conduct was dishonesty, not pornography consumption." *Id.* Further, "the government did not otherwise establish that pornography use was, in fact, a barrier to [Ellis's] rehabilitation." *Id.* The court reiterated that a special condition "must be supported by individualized evidence to meet § 3583(d)'s reasonably related standard." *Id.* The special condition imposed by the district court in *Ellis* did not meet that standard.[15]

---

[15] *See also Castellano*, 60 F.4th at 219–20 (reversing district court's denial of the defendant's request to narrow a special condition that broadly banned access to pornography because the district court's rationale was not "supported by individualized evidence to meet § 3583(d)'s reasonably related standard" (quoting *Ellis*, 984 F.3d at 1100)); *Tyson*, 2022 WL 964017, at *2 (concluding in felon-in-possession case that the district court abused its discretion because it did not "explain why it imposed special conditions . . . relating to substance abuse and mental health treatment and warrantless searches, or the additional standard financial conditions" and the reasoning was not self-evident); *Wroblewski*, 781 F. App'x at 162–63 (vacating condition restricting access to sexually explicit material because "[t]he district court's only explanation for imposing this condition was that the condition 'is a standard condition for sex offenders' and that the condition was 'necessary and appropriate under the circumstances'" and "[t]here [was] nothing in the record indicating that pornography or sexually explicit material played any role in Wroblewski's behavior" or "showing why the broad restriction is warranted in this case"); *Finch*, 482 F. App'x at 841 (concluding in failure-to-register case that "the district court abused its discretion because it failed to explain its rationale for . . . sex offender conditions, including sex offender treatment and severe limitations on Finch's use of computers").

In cases where the district court did conduct an individualized assessment and explain why, under the facts of the case, the condition complied with § 3583(d), the Fourth Circuit has affirmed the imposition of special conditions. *See Van Donk*, 961 F.3d at 323 (affirming imposition of pornography ban in sex offender case where district court satisfied the "individualized assessment" requirement "as to each special condition"); *see also United States v. Olson*, 114 F.4th 269, 274–75 (4th Cir. 2024) (finding no abuse of discretion in imposing special conditions on child pornography defendant that limited the use of drugs and alcohol and required substance abuse testing and possible treatment because the district court incorporated its discussion of the § 3553(a) factors relevant to the sentence and the conditions were "reasonably related to [his] offense and characteristics" and "to the statutory goals of deterrence, public safety, and rehabilitation"); *United States v. Cuevas*, No. 22-4285, 2023 WL 6366690, at *2–3 (4th Cir. Sept. 29, 2023) (concluding in drug distribution case that the court could "judge whether the § 3583(d) factors ha[d] been met"—they had been—because the district court "sufficiently explained the reasons" for imposing conditions requiring disclosure of financial information and permission to open credit lines); *United States v. Parr*, 750 F. App'x 218, 219 (4th Cir. 2019) (affirming imposition of conditions in failure-to-register case where "[t]he district court explicitly considered Parr's history and characteristics and the offense's nature and circumstances—including its violent nature and temporal remoteness"); *United States v. Luongo*, 102 F. App'x 824, 825 (4th Cir. 2004) (finding district court did not abuse discretion in imposing condition requiring payments on civil judgment because "the district court found the condition appropriately related to the factors referred to in 18 U.S.C. § 3583(d)").

With these cases in mind, the Court concludes that the proposed special condition—requiring Mr. Gaskin, for the remainder of his supervised release term, to submit to "periodic

polygraph testing at the discretion of the probation officer as a means to ensure that [he is] in compliance with the requirements of [his] supervision or treatment program"—does not satisfy § 3583(d)(1)'s requirement that the condition be "reasonably related" to the nature and circumstances of his offense, his history and characteristics, and the statutory goals of deterrence, protection of the public, and rehabilitation.

Mr. Gaskin's offense was distribution of child pornography. The circumstances of the offense involved him emailing, between 2010 and 2012, hundreds of images of child pornography to an adult he met in an online chat room. The nature and circumstances of Mr. Gaskin's offense justified the sex offender treatment condition imposed in 2014. But the nature and circumstances of the offense do not, on their own, justify the imposition of a special condition—a dozen years after the offense concluded—that requires Mr. Gaskin to submit to polygraph testing outside the treatment setting and at the discretion of a probation officer for the next decade.

Even when the nature and circumstances of the offense are considered alongside Mr. Gaskin's history and characteristics and the statutory goals of deterrence, protection of the public, and rehabilitation, the polygraph testing condition does not satisfy the statutory requirements. Probation has not submitted any evidence specific to Mr. Gaskin that supports imposing the condition on him. And the evidence the Court does have—Probation's report on Mr. Gaskin's performance under supervision, his voluminous treatment records, and his polygraph examination results—compels the conclusion that the special condition does not satisfy the statute's requirements. According to Probation, Mr. Gaskin successfully completed a three-year sex offender treatment program after his release from prison. When his treatment providers directed him to take a polygraph, he complied. In total, he sat for six polygraph examinations. Each test result showed no deception detected. Mr. Gaskin's treatment providers reported that he regularly

"participate[d] in a productive and honest manner in individual and group sessions," ECF 57-4, at 21, his participation was "consistently meaningful," ECF 57-1, at 17, and his "treatment compliance [was] excellent," ECF 57-4, at 5. Additionally, Mr. Gaskin "report[ed] increased positive and honest communication with his friends and family members." ECF 57-1, at 16. He met "two of his major treatment goals," continued to make "progress towards taking accountability for his offense behaviors," "made efforts to be more social in the community," and "continue[d] to use relapse prevention strategies effectively and reported no lapse or relapse behaviors." ECF 57-4, at 5, 21, 24. There is no evidence that Mr. Gaskin has been deceptive to his treatment providers, his probation officer, or the Court. There also is no evidence that he has committed another crime or violated his conditions of supervised release. In fact, according to Probation, Mr. Gaskin has fully complied with every release condition since he was released from prison in December 2019. He lives alone, works part-time, and continues to participate in mental health counseling. Nearly five years into Mr. Gaskin's 15-year term of supervised release, the evidence before the Court indicates that, in this case, the statutory goals of deterrence, protection of the public, and rehabilitation have, so far, been met.

The only evidence that Probation has offered in support of its request is a November 1, 2023 letter to a probation officer from Elizabeth Raeder Freeland, a sex offender treatment provider and Mr. Gaskin's former therapist. At the outset of the letter, Ms. Freeland explains that "[t]he purpose of th[e] letter is to inform the court of the important clinical uses of polygraph examination in sex offender treatment." ECF 50, at 1. She states that "[p]olygraph examination is utilized in many sex offender treatment programs." *Id.* She then describes the benefits of polygraph examinations as a tool for sex offender treatment providers. *Id.* The examinations can "help determine whether clients are engaging in sexual acting out behaviors while in treatment"; "can

serve as a motivational force" to "cease" "maladaptive, compulsive, addictive behaviors"; and can "promote needed disclosures in treatment." *Id.* In closing, Ms. Freeland states: "[P]olygraph examinations can serve as a deterrent to future offending behavior, which is in the interest of community safety." *Id.* The letter never mentions Mr. Gaskin. A generic letter from a sex offender treatment provider that explains the clinical uses of polygraphs in sex offender treatment does not justify a condition that requires Mr. Gaskin to submit to polygraphs outside of the treatment setting, at the sole discretion of a probation officer, for the remainder of his supervised release term.

The district court's "broad authority" to modify conditions of supervised release does not extend as far as Probation would like. *See McLeod*, 972 F.3d at 641. A special condition like the one Probation seeks must be "tailored to the specific and individual circumstances of each defendant," *id.*, and it must be supported by facts specific to the defendant, *Rogers*, 961 F.3d at 297. Probation has not tailored its request to the specific circumstances of Mr. Gaskin, and it has not supported its request with facts unique to him. After an "individualized assessment" of the specific facts in this case, *id.*, the Court concludes that the polygraph condition is not reasonably related to the nature and circumstances of Mr. Gaskin's offense, his history and characteristics, or the statutory goals of deterrence, protection of the public, and rehabilitation as they relate to him.[16]

---

[16] Mr. Gaskin also objects to the polygraph condition because it involves "greater deprivation of liberty than is reasonably necessary" to serve the purposes in § 3583(d)(1). *See* 18 U.S.C. § 3583(d)(2). The "reasonably necessary" requirement of § 3583(d)(2) "'in effect require[s] the court to choose the least restrictive alternative' to achieve the statutory purposes." *Ellis*, 984 F.3d at 1102 (quoting *United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013)). The Court need not decide whether the condition is overbroad under § 3583(d)(2) because the condition does not satisfy the reasonably related requirement of § 3583(d)(1). However, the Court has concerns about the proposed condition's broad language. For example, it does not restrict how often Probation may require polygraphs or what topics may be covered. And by its terms, it will remain a condition for the entire period of supervised release, even if Mr. Gaskin continues to pass the polygraphs and perform well under supervision.

**IV.    Conclusion**

Probation's request to modify Mr. Gaskin's conditions of supervised release, ECF 40, is denied.

Date: <u>December 12, 2024</u>

_____
Deborah L. Boardman
United States District Judge